The last case for oral argument is People v. Phillips. Counsel, whenever you're ready, you may proceed. Your Honor, David Angman of L. H. Phillips Court of Defendant v. Phillips of the Pleasant Court and Counsel. The first one of the rest of the courts issues relating to pre-trial matters. My colleague will follow me with others. The first one would be the speeding trial issues. This is the first of the three. This court is awarded with constitutional and statutory rights to speed trial that are not co-existing. I'll begin with the statutory right. Of course, the statute is clear, but the case law has concepts that it deals with in terms of triggering and tolling that are not in the statute. One must look to the cases for when those are implicated. Clearly, this court has decided that People v. Workman, the appellate court also, and People v. Pecos, that the speeding trial plot for statutory purposes begins with the time of arrest, and it begins without a man. In this case, then, since the defendant was served with an arrest warrant for first-degree murder on December 23rd, 2003, the clock normally would start then. Counsel Argus has anticipated that this court's decision in the People v. Weisman, and its progeny and predecessor from the Supreme Court, Davis, would toll that time, would toll the clock, even though that does not end the language of the statute. First of all, I've indicated a few reasons why the court should not apply the tolling rule in this case. One, of course, is the statute doesn't say so, but I recognize People v. Weisman, and also Wells and Davis and Clark. But I also indicated that in this case, the court found that he was in custody on the Sinclair case. That was by court order. Also, the state argued it, and the court found that in the trial court. Obviously, the next proposition from the defense, from the state, would be that he would be in custody for one purpose and not another. And I would ask you to look at the totality of the circumstances in this case, and use the language in Cordell, which is what our Supreme Court most recently determined relative to statutory duty trial, and apply the rules of justice equally to the state and the defense. In Cordell, they were concerned about gamesmanship on part of the defense. I'm suggesting there's gamesmanship on part of the state in this case, and it's coordination with the prosecution in the Brown County case for which the defendant was also in custody. In short, the state said in the trial court, the trial court found he was in custody for statement purposes. In fact, when he was sentenced, he even got credit for being in custody since December 23rd, 2003. And those were not the facts. And I'd ask you to distinguish those and not apply the tolling rule relative to the speedy trial plot, if you will, in this case. Failing that, alternatively, I would ask you to reconsider the time that the trial court attributed to the defense when we objected to the last trial continuance were essentially sanctioned in terms of applying a delay attributable to us because of what the state called late discovery. There's a lot of that in the briefs, and I know your honors have read that. It's just to make clear what our position is. First, don't apply the tolling. But even if you apply the tolling, the automatic trigger would once again begin the clock at 6-22-2004, and between then and September 8, 2004, is 78 days. If you attribute those last 58 that we objected to, the trial court imposed on us, Judge Fisk imposed on us, that would put it over the 120, violating the speedy trial statutory, and we would ask the case be dismissed on that basis. Obviously, in terms of statutory, there's also constitutional arguments. The Supreme Court, if people be fostered, just said that Section 8, or the one of our state constitution, must be liberally construed, and its provisions cannot be, quote, frittered away by technical evasions. I suggest that if you analyze that from a constitutional standpoint and look at the totality of the circumstances in this case, you might find that that's exactly what the state wants you to do, using technical evasions and gamesmanship, to use the la faire word to, in effect, prohibit the speedy trial clock from running. In terms of the constitutional, there's no plot, per se. The cases are, frankly, Barker, Dickey, Hooley. It's almost like an amorphous concept of what this constitutional speedy trial is. There's no plot, per se. You're supposed to look at, according to those cases, the totality of the circumstances and the entire record in a case. And I begin with, because the Dickey case indicates the state has a constitutional duty to make a diligent and good faith effort to secure the return of the accused for a trial. In this case, that's exactly what did not happen. As the court is aware, it was 254 days where the state did not present, or even attempt to present, its defendant to any quarrying for appointment of counsel, when he was then charged with a crime for which the death penalty could have been imposed. And as I recall, the facts statements were taken of him during that time frame. There were two statements taken during that time, again, without counsel by the state. And those were the subject of other parts of the brief that occurred. And, of course, there's other things that did not occur. When you're looking at the constitutional mechanism of a speedy trial, you're supposed to look at four things. The length of the delay was an uncommonly long. I'd suggest most cases where a capital crime has allegedly been committed, do not go 254 days prior to arraignment. That's not an acceptable constitutional standard. I would hope that this court would decide. The reasons for the delay. What's the reason for the delay? Inconvenience? If you look at the record, again, that's what validates the record that you're required to look at. The real reason is they're still investigating the case. They're taking the defendant's statement. They're keeping him incarcerated until he can and they can't. The third is assertion of his right. It's more difficult to assert a right when you don't have a counsel and you're not sure what your rights are. Ultimately, obviously, he did assert a right, which triggered the eventual arraignment to occur. He was in prison at the time, but he filed a process. He filed the man. He would have done that, I guess, one way of looking at it, pursuant to the Interstate Detainers Act. Well, of course, that's what the state argument is. The only way you start the clash is you've got to file the Interstate Detainers Act. And that is what the Act says, right? If you're held in another jurisdiction. Well, there is case law that suggests that, but I would say to the court, quite honestly, I don't know if 99% of the lawyers in this state know even what the Act says, much less how to do it. We wouldn't use that as a standard on anything. Well, I appreciate that, but I would hope that we would not impose that burden on an incarcerated defendant without counsel. And I appreciate the court's consideration of that argument. I think it was the time. And I've turned the balance of my time. Well, let me touch on one other thing, because I must. I realize I'm taking my colleagues' time. This issue about the fees, very simply put, a Gerstein violation. There was no presentment. The order required it to be presented. The state flagrantly violated that. The issue of fees is unique to this state. The state now has error, essentially, that really the client was and remains innocent, even though I'm not an appointed counsel. I'm a private counsel. But the state case law here is clear. And we've continued to ask for experts and investigative services. The court, at least in terms of investigative services, previously found important enough to order for the van engine and defendant, and there was no other inquiry. And I'd ask you to seriously look at those issues and decide for this state, initially, that a person is innocent based on their own assets. I know there was, last week, the 2nd District decided people be Abernathy, which is so held. And I'd ask this court to consider that the person, this defendant, was not given enough serious constitutional deprivation that can be corrected with remand. Thank you, counsel. And I ask that I leave as counsel. Counsel? Mr. Phillips was denied a fair trial in a number of different respects. First, repeated references were made during the state's case in chief to the existence of an order of protection against Mr. Phillips by his ex-wife. The existence of an order of protection falls within the category of other crimes evidence. And the law is clear that other crimes evidence is generally inadmissible. The reasoning behind that is that it tends to make the jury believe that a person may just be a bad person deserving of punishment, rather than going towards anything that is relevant to guilt or innocence. Unlike a conviction for a crime, an order of protection is even more dangerous to a fair trial because it creates sort of a persona about Mr. Phillips. It carries a broader connotation that perhaps he is dangerous in and of himself, that he is violent, that he is incapable of ceasing his dangerous and violent behavior on his own, and that a court has had to intervene in the past to prohibit him from future dangerous and violent behavior. So it carries a very strong connotation, unlike perhaps a possession of drugs or something like that might to a jury, especially when the jury is sitting at something like a violent murder trial. And here we have multiple injections of this highly prejudicial evidence into the state's case in chief. And then again, after two incidents there, the court itself then injects error into the case by giving the jury this same inadmissible evidence during deliberations. The state cites cases in their brief that go to the general principles of when evidence such as this requires reversal. And they go into the general principles and rules of law under Sims, Melchor, and Hall. I find it interesting that they cite the Hall case in their argument that a motion in limine regarding prior convictions can be, a violation of that order can be the basis for a mistrial. However, it has to rise to a certain level to be able to fall under that category. In the Hall case, other crimes evidence was discussed a little bit more thoroughly than the other cases cited. And the court in Hall found that other crimes evidence is inadmissible because it carries that risk that I mentioned. Furthermore, the erroneous admission of other crimes evidence ordinarily does call for reversal. Now, the state cites that case for the premise that the violation of a motion in limine or an order in limine doesn't necessarily rise to the level of a mistrial. However, in the Hall case, a prior crime was mentioned by the assistant state's attorney at trial in a question to a state witness. The witness simultaneously with the objection by the defense counsel, that witness got out an ambiguous answer, something like, I don't know. But defense counsel objected, the court sustained the objection and instructed the jury to disregard that question. That was the one incident of the state injecting inadmissible evidence into their case in chief in the Hall case. Here we have multiple incidents of very prejudicial information. And what we turn to at that point is, is that information likely to impact the jury and compromise the integrity of their verdict? Here at trial and post-trial, defendants attempted to lay down for the court exactly what the actual use of that information was by the jury. And the counsel for the state at trial objected, citing the Serlak case and indicating that the defense counsel was not entitled to go into that information because it probes the mental processes of the jurors, which is territory that we generally try to stay away from. While that is the case, and we don't want to delve into the deliberative process, it's important that if information is known to any of the parties that improper influences were used by the jury in their deliberations, that it is fully inquired and that the jurors are questioned. Darlene Chapman was present and prepared to testify, but based on the objection by the state, she was not allowed to do so. Neither was Andrew Cisnowski, who was one of the trial counsel for Mr. Phillips. However, not having that inquiry fully fettered out at the trial level to be able to present for you, what evidence do we have to look at to determine whether or not the jury considered that in deliberations? We have the fact that they asked for that videotape. They asked for it specifically. Now, the state indicates that the defense at trial took no position as to whether the original copy of the videotape, where the order of protection was mentioned, or a redacted version should be sent back. That's not true. The defense very clearly took the position that neither should go back because of the violation of the order in Lemonade, because of the violation of Mr. Phillips' right to a fair trial, and because of the prejudice that had already been injected. However, the court at that time decided to send back the original and allow the jury to review a tape where an order of protection against Mr. Phillips was used. Was there any objection made to the choice that when the judge did choose to send back the original tape? The objection that was made was that no version should go back, and there was a rather lengthy discussion about whether redacting it and having that little blip cut out in there, whereas some of them probably had heard it, at least some of them, as it was played for the jury initially. They may be looking for it, notice that it was cut out, which would call attention to it. On the other side of the argument, there was discussion about leaving it in, and what if they're going there just to look for that, and they really are able at that point to point it out to other jurors who maybe hadn't heard it or weren't heavily considering it. Seeing that there was no good option, the defense took the position that they heard it once, they heard all the evidence contained in that video at trial, and that it should not be sent back to either highlight that it is there or highlight that it's been removed from them. And the state on appeal contends that that was, in effect, a waiver by the defense, an acquiescence in that version going back, and it certainly was not. The defense did not have a good option to choose. Once the information was out there, sure, it would have been great to have the option of playing a new videotape, but there was evidence that was already in that contained this inadmissible information. It should not have been highlighted by sending it back to allow them to review it again. Now, interestingly, the state argues extensively on appeal that the defense failed to properly move in limine to keep that videotape out, failed to use the term order of protection in its written motion in limine. Now, the actual order in limine was you were requesting the court to exclude certain evidence if the defendant testified, right? I had that in my notes, and I don't remember where that came from in everybody's extensive briefs, but was that what the motion was? I believe that there was one motion that did say that, that unless the defendant testifies, evidence that would otherwise be used as impeachment should not come into the state's case in chief. However, there were other motions made. I don't recall how many of them were reduced to writing. There was also an agreement with the state that was put on the record indicating that neither side or both sides would advise their witnesses not to use the term order of protection specifically. Regardless of all the arguments as to whether or not the defense properly moved in limine, the fact here is that there is no admissible purpose for that evidence to come in at all. And it's well settled that the proponent of evidence has a duty to secure a ruling on its admissibility. And when you're talking about something so prejudicial as an order of protection against a defendant who is charged with a crime of murder, certainly the state had a duty to secure a ruling prior to playing that videotape for the jury or putting on the witness that discussed the order of protection. Thank you. Counsel? Good afternoon. May it please the court and counselors. I want to talk about some of the facts here. We've got a lot of sort of general arguments here. I'm going to start with the order of protection and then I'll move my way to some of the other things that were discussed here. First of all, an order of protection is not a crime. The violation of an order of protection is a crime. An order of protection is not a crime. However, I will admit to the fact that the mention of an order of protection does have something of a prejudicial nature to it because it does leave one to speculate what was the basis or the reason for that order of protection. So I'm not challenging necessarily the notion that the defense has here that there's no problem with an order of protection. I think even the state acknowledges much because there was this agreement that nobody was going to bring out the fact that there was an order of protection. Now, leading off – And did that agreement – Yes. Was that agreement spread on the record before the videotape was played? Yes. Okay. Yeah, there was discussion there and I'll get to that. Okay. The first, I guess, appearance of the order of protection issue, if you will, came in a Montgomery hearing to decide to determine which convictions would be admissible against the defendant if he chose to testify. The defendant apparently had a conviction for a violation of an order of protection that in fact may have been the Brown Act case that plays into the speedy trial issue. I don't recall offhand. It was agreed and it was decided and set upon that that would not be used against the defendant. Later there was, I think it was after the suppression, a hearing, we'll call it a redaction, where there was discussion about what, if anything, would be redacted from the videotape or tapes that the state may use. To sidetrack slightly here because I want to address the question you had, Justice Stewart, the only tape that the state used was the December tape. I think it was December, but that was before he was arrested. The latter two tape statements were not used by the state. So, however, that plays into the constitutional speedy trial of the 109-1 issue. I just want to make that clear. At the redaction hearing, the defendant had requested, there was no mention at that time of redacting from the videotape the order of protection reference that the defendant made. I'm going to talk about that exact reference here because that plays into the prejudice aspect of this case. I'm sorry, Mr. Daley. Yes. At the redaction hearing, what was the purpose of the redaction hearing? The purpose of the redaction hearing was, as it relates to this particular videotape, the defense had requested that, I believe it was a reference to the defendant's invocation Fifth Amendment rights or something of that nature. It didn't have anything to do with the order of protection. Okay. When it came to the time of trial, the defense and the state submitted that there was not going to be, they didn't want to have any mention of the order of protection in the case. It was sort of, it was not reduced to any kind of writing and appeared to be kind of a verbal agreement between both parties. If you look at the record, you see the way that it's characterized. It comes sort of in the nature of, well, no witness is going to refer to this. Okay. When it came time for the admission of the tape, the state offered the tape, which was the tape the defendant's interview with the police interrogation would have. There was no objection to the tape being played, and the tape was played. The defendant himself, during the course of the Q&A with the police officer, mentioned an order of protection. Now, after this tape was played, then the defense moved for mistrial, or put the jury out of the room, claiming that this was a violation of the agreement, if you will. The state admitted that it had forgotten it was even on the tape, but it stated that it believed that the understanding was that the witnesses weren't going to be allowed to discuss it, and in any event said it wasn't really harmful because of the context in which it was used. I would agree with all of that, and I think Ms. Korsh agreed with all of that, but in any event, it did come out again. There were, I guess if two references constitute multiple references, as the defendant repeatedly characterizes here, there were two. The second time came during the cross-examination of one of the state's witnesses. The name removed me at the moment, but in any event, he made some statement in effect of, like, no, there's all these problems with the order of protection, and this was during the cross-examination. Shouldn't have come up. Okay. You know, we're not contesting that. The defendant moved for mistrial and asked that this witness be held in direct contempt of court. The witness was, I guess, voir dire, if you will, outside the presence of the jury, where he admitted that he was informed by the prosecutor and by the police officer before trial not to make any mention of the order of protection, that he knew he wasn't supposed to. It just got blurted out. As I said to characterize it, it's a cross-examination. Things can get kind of hairy. Sometimes people forget these things, and it was inadvertent. The court found it to be inadvertent, not sufficiently prejudicial that it warranted a mistrial. Those are the two instances where it came out, and then the tape went into the jury, and we'll talk about that in a minute as well, because I think of all these things we're talking about, that's probably maybe the defendant's strongest point here at the appeal. With regards to what the tape says, and I think it displays directly upon the prejudicial impact of the tape going to the jury, the defendant didn't mention when he was asked by the police officer that he was convicted of the order of protection, because I don't think he was. He didn't even mention that there wasn't one protection. He mentioned his way, in the context of explaining why he felt that all of this was basically a product of his now ex-wife going after him, was that she was going to try to get an order of protection, retain an order of protection against him, by my recollection of the tape itself. When you're on this type of tape, you'll be able to watch it, and I don't think that there was a transcript made of it, but it's easy enough to follow. So that being the case, while I don't really even dispute the defendant's argument that maybe it shouldn't have gone back to the jury, I don't think that that fact alone warrants a mistrial, because the context of it was not, as the defendant says here, to show the defendant was a bad person. The context was not to bring out prior bad crimes or bad acts. The context of it was strictly from the defendant's mouth, for the purposes of explaining why he thought that he was just being set up. So it's difficult for me to conceive of what the prejudicial impact of it is, when A, it comes from the defendant's mouth, and B, the context of it was such that it really actually neatly dovetailed into the part of the defense theory here that a lot of this result of this admittedly very circumstantial case against the defendant was a product of a vindictive ex-spouse. So just to say that it came in and shouldn't have come in isn't enough. Did it fundamentally affect the defendant's right to the trial? The answer to that is no. Now, with respect to the witness's reference to the order of protection, it was a fleeting reference. It didn't provide any kind of details or anything. Defense counsel, I think, very ably, I think, cut off that sort of particular line of questioning, so didn't really have any chance for it to be brought out any further. And I think that the judge who presided over this case in hearing, in the best position here, how the evidence is coming out, made the decision that this was not enough to warrant a mistrial or to find the defendant's right to a fair trial were denied. The defendant did not ask for a curative instruction, which would have been his right. He doesn't have to. Sometimes it's tactically sound. We see this issue every now and then about whether a defense attorney should have asked for a curative instruction. Sometimes all it does is draw the jury back to that particular aspect of the testimony. On the other hand, however, it is something that the courts have consistently held does mitigate, if not eliminate, the prejudice that results from something that came out when it shouldn't have come out. That is also another consideration of this case. So in sum, the court was correct that there was no warrant grounds for a mistrial. As far as the tape going in, counsel is right. I do make a waiver argument. I make lots of waiver arguments in this case, and I could spend the whole time talking about it all. But in this case, I could kind of see the defendant's point as well, that they just didn't want to tape it a little bit up. The point that I'm making here is that even with it going in, it was not, in its context, sufficient. And this court will see the tape themselves to warrant a mistrial in this case. Now I'm going to go back to the speedy trial issue, unless Your Honors have any questions about this issue. The defendant argues both a statutory and a constitutional speedy trial issue. The defendant is correct that Weisman or Weisman, I don't know how it's pronounced, a case from this court addressed a very similar issue to this one, where a defendant is being held in simultaneous jurisdictions. The timeline of this case is the defendant was arrested by issues of a warrant on December 23rd of 2003. He was, however, prior to that, formally charged with other offenses in Brown County on December 19th of 2003. It was technically in Brown County first. He was ultimately convicted in Brown County on May 12th of 2004, was sentenced on June 22nd of 2004, and was in the Department of Corrections thereafter, until on August 24th of 2004, the defendant filed a pro se, quote unquote, speedy trial. It was not a proper demand in the Interstate Detainers Act, but it was nonetheless a pleading that was filed in the St. Clair County Court. It obviously prompted prosecutors or whoever to bring the defendant into St. Clair County where the defendant was formally arraigned on indictment on September 2nd of 2004. Weisman really dealt with a very substantially similar set of facts. Now, the defendant argues here, I think really kind of for the first time, that, well, you know, the statute doesn't say anything about how Weisman says it, so therefore it shouldn't be applicable. The retort to that, however, is that Weisman deals with a particular factual nuance of the speedy trial statute, and that is simultaneous custodial situations. And basically, you know, Weisman reflects sort of that longstanding rule, you know, if you're in simultaneous custody, one goes first and the other goes second. What makes Weisman even more on point is the fact that the defendant was then in the Department of Corrections immediately following the resolution of his Brown County case, which Weisman held that he's not in St. Clair County at that point, despite the fact that the warrant had been lodged against him, that the defendant had to go with the Interstate Detainers Act. Now, you know, like all things that are legal, obviously the pros say, but again, it's not always an easy thing to do. But the cases have held consistently, time and time again, that this is the remedy that a defendant, be he pro se or whatever, is required to make in order to trigger a speedy trial. This is the legislative field, and that is what this Court is bound to, I think by its own precedent, is bound to follow. Now, the defendant argues that, well, okay, we've got some gamesmanship here, and there hasn't been a lot of argument here to follow up exactly what that means. There was some argument in this case about that there was some collusion or conspiracy or some sort of something going on between Brown County and St. Clair County prosecutors, I guess, to get the defendant charged in Brown County first, I guess for the purpose of stopping the clock against the defendant until St. Clair County took over. While it doesn't appear to be any question that there is communication between Brown County and St. Clair County, it's a far cry to call that a collusion or some sort of evil plot to deny the defendant a right to a trial in an expedient fashion. I think that that probably is played out no more greater than the fact that the Brown County case wasn't some trumped-up charge, obviously, he was charged, he went to trial, pled guilty, I don't know, he was convicted, and he went to prison. So, if there is gamesmanship here, I guess if he'd gone to St. Clair County first, he might be hearing the same argument in Brown County. So it's a can't-win situation for the state, obviously, if we're going to accept this particular argument. In any event, the defendant doesn't cite any case law which talks about this kind of quote-unquote gamesmanship. Gamesmanship typically comes in the form of case law where the state's rigging things in the sense of what happens during a case. For instance, a Day 119 motion to release, dismissal of the charge and then refile later. But that's the kind of gamesmanship that we often see in case law. There's no gamesmanship here. One county, two counties, they both charge and one went first. It's no more complicated than that. I do want to talk about the delay that was attributed to the defense as a result of the discovery sanction. Interestingly, I kind of wasn't really sure why the defendant even brought this up in the brief, given the fact that we're only talking about a 58-day period that was a result of the sanction against the defendant. It wasn't argued in the defendant's opening brief, the interplay between that and the broader speedy trial issue, although I postulated at the time that maybe they're going to try to argue that that, combined with the time between the sentencing and the time of the defendant being brought back to St. Clair County would equal x-maxes of 120 days. And lo and behold, that's exactly what's being argued today. All I can say to that is that it still falls within the ambit of wisdom and what the defendant has to do in order to invoke the speedy trial rights when he is in the Department of Correction. So standing alone with 58 days really doesn't mean anything. I could argue for a while here about whether that court was correct, and I do think it was correct, for reasons in my brief that there should have been some sanction, and the sanction wasn't an exclusion of any kind of evidence. The sanction was a result of essentially an eve of trial well past a agreed-upon discovery deadline that the defendant lays upon the state the results of some of their own independent DNA testing. So with regards to the constitutional speedy trial, I don't want to get too deeply into that. The defendant's frame of the argument here is essentially if you look at the time he was arrested to the time he went to trial, you've got a really long period of time. Then it starts at that, and then it starts to sort of compact itself into these particular time periods and that particular time period. Well, clearly I think that you have the time when he was arraigned and brought back to St. Clair County until the time of the trial. A lot of that delay is attributable to the defense. It's a result of continuances or agreed-upon continuances with the exclusion, of course, that the defense would contest the ex-58 days, I believe, for the sanction. The time before that, it's difficult to conceive of how there could be a not be a statutory speedy trial violation, but there be a constitutional one. It's usually the other way around. And so what we have here, of course, is there are certain elements that the court has to look at, such as was the delay uncommon to the law? Was the government or the defendant responsible for the delay? Was the defendant in due course asserted speedy trial right under pressures? I would just rest my grief on that issue, just only to mention that I believe that there is, although as the counsel correctly points out, these are not coextensive rights, there is a coextensiveness in terms of determining who's at fault and what's going on and what was the defendant required to do in order to assert that right. I don't think that the time between the time of arrest and the time of arraignment is considered to be an excessively long time period, even if you attribute all of it against the state. And I don't think you can because of the concurrent custodial situation. I do want to make one thing about the investigative services and expert witnesses issue. I had some fun with this one because it really is something I've never seen before. And I have, as you'll see in my brief, I have conceded that the defendant who is getting the services of private counsel, and they're not by any appearance of the record being pro bono, that the funding is coming from some third-party source, and I'm presuming, I guess, for the sake of argument, that's the situation here, they can still be deemed indigent for purposes of a request for the appointment of an investigator and appointment of an expert witness. I draw that from a line of out-of-state cases and federal cases which have dealt with more or less similar situations. So to the extent that this comes up in this case, you know, this is what I would submit to the court should be the law of the state as well. It appears to be consistent with what other jurisdictions have held. Alas, the question doesn't stop there. The next issue is whether or not the defendant, in the case of Illinois is clear, has made it showing that there is a crucial need, a crucial issue, excuse me, which requires or should compel the court to appoint an expert witness and provide publicly funded fees for that expert witness. The cases have said that it's not enough to just say, well, we need an expert witness in order to explore our defense options. That's not the identification of a crucial issue. If it were, then a crucial issue is a meaningless term. What we look at in this case, leading up to this, is there was a lot of argument, understandably given the type of arguments that we made about indigency, about whether the defendant was an indigent for purposes of it. But there was never any discussion or anything offered by the defendant to show a crucial issue for which they needed the fees for an expert witness. Well, without reading the record, were they able to get to that point? I mean, the judge said you don't get any investigators or expert witnesses because the defendant's not indigent. Well, I understand, however, this whole type of inquiry starts with a motion for a request for an expert witness. So in the first instance, it's really the defendant's obligation to make it show. I don't know, looking back at the record, whether we have a situation where there was a judge's cutting being cut off, we do know that there was lots of times where the defendant could have made this shown and yet did not do so. There was the motion in the first instance, and then there was a motion to reconsider, and there was argument in the record, but at no junction was this showing the aid of a crucial issue. I don't think it's the state's obligation to rebut the existence of a crucial issue because there's no way for them to know what it is. It's the defendant's obligation to come forward and explain why. The indigency doesn't mean you open up the state coffers to pay for expert witnesses at all for the defendant. It's the first and critical step, but the next step then has to be the showing of a crucial issue, and that was not done in this case by the defendant. I'm out of time, Your Honors. I appreciate your attention, as always. Thank you. Thank you, counsel. Counsel? Was a crucial issue indicated? I'm sorry? Was a crucial issue indicated? No, and again, it was because trial counsel did not have the opportunity to get that far. In fact, the motion that was filed for the appointment of an investigator was filed only as a security blanket so that an investigator was not employed and then the court refused to pay. The investigator had already been appointed. But wouldn't you have to, if the court ruled that he was an indigent, then shouldn't you have requested an offer of proof? At the time that it happened, the ruling was made and no offer of proof was given. However, later in the post-trial motion, I was placed on the stand as a witness and questioned. My understanding of the law is that inquiry is to be made by the judge before ruling on whether someone is indigent. No such inquiry was made. Had it been made at that time as opposed to after trial, the record is clear that I appeared 100% pro bono. I took a three-week leave of absence from my job and from my children who were one and two at the time. That wasn't in the record because the judge ruled prior to any ability to get that in and did not make such an inquiry. The purpose of the motion requesting the investigator was to be certain that we could continue to use the investigator that was already appointed. There was a written order indicating that the defendant was indigent and this investigator was appointed for purposes of investigating this case. However, substituting it as counsel, it was clear that the attorneys wanted to be certain that they weren't overstepping their bounds by calling this investigator directly and just employing him without a subsequent okay from the court. That was, however, denied, and there is testimony after trial as to what some of the effects of that were. With respect to the constitutional speedy trial argument, if you have no other questions. Let me ask, was there a motion for the appointment of expert witnesses separately from the investigator? I don't believe that there was because the ruling had already been made that the defendant was not indigent. Okay. Without a finding of indigence, we didn't have grounds to file a motion for such. Right. So certainly there wasn't any showing made at all about a specific need for any experts. No, sir. It was not made in the pretrial stages. All right. Thank you. When we look at the constitutional speedy trial argument, we have to weigh that with this Interstate Detainers Act requirement. The Interstate Detainers Act requires someone to follow certain procedures, notify the prison or whatever facility is housing that person, notify the state's attorney of the county where he's being prosecuted. Those procedures must be followed in order to invoke his statutory right to a speedy trial. There is nothing that requires those procedures to be followed to invoke his constitutional right to a speedy trial. In fact, that right is always present. It does not need to be invoked. It may be waived. However, it was never waived here. For counsel to refer to Mr. Phillips as a pro se litigant and to infer that somehow he should be held to the same standards of an attorney, that doesn't apply in this case because in this particular case, you can't separate our argument as to the speedy trial violation from the argument as to the Gerstein violation. They are inextricably bound here because Mr. Phillips was not pro se. In fact, he had never even been advised that he had a right to an attorney. He had never been appointed an attorney. The court is required to go through a whole series of steps to determine if someone is allowed to even perceive pro se on a case of such magnitude. He had never even been told he's entitled to an attorney, let alone inquire of him whether he's able to represent himself coherently and responsibly. He is not placed in the same category because in this case, there is also that Gerstein violation. When you put those two together and you look at this delay of 254 days that a man sat in a jail without the advice of counsel, then you add to it the repeated references to St. Clair County personnel, prosecutors, police officers, investigators, making the trip to Schuyler County to talk to Mr. Phillips while he sat in the jail, making the trip to Schuyler County to talk to Don Ritchie, a witness in this case, to talk to Don Ritchie's attorney, who happened to be the former state's attorney of that county, to talk to other witnesses in that area, Jai Toomes, who testified at trial, to go into Mr. Phillips' former marital residence and look through boxes. All of this was happening in the county where Mr. Phillips sat incarcerated with personnel from St. Clair County engaging in this, yet they never bothered to bring Mr. Phillips to a judge to get an attorney appointed for him so that that attorney could also investigate those things, so that that attorney could perhaps, it was an issue in the trial, but John Little, a witness from a Missouri prison, had recently spoken to investigators regarding this case and a confession by another inmate committing this crime. Mr. Little gave a videotaped statement as to everything he had overheard from this other Missouri prison inmate. However, with the passage of time until trial and no investigators being appointed and no attorney being appointed at trial, Mr. Little testified that so much time has lapsed, he had very little independent recollection of what he had heard. Thank you, Counsel. Thank you. We appreciate the briefs and arguments. Counsel will take the matter.